United States District Court
Southern District of Texas
**ENTERED**
May 06, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CARL WAYNE BOUTWELL, JR., | § § § | |
| Plaintiff. | § § | |
| V. | § § | CIVIL ACTION NO. 4:23-cv-01927 |
| COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| Defendant. | § § | |

## OPINION AND ORDER

Plaintiff Carl Wayne Boutwell, Jr. ("Boutwell") seeks judicial review of an administrative decision denying his applications for disability benefits under Title II of the Social Security Act (the "Act"), and supplemental security income under Title XVI of the Act. Boutwell and Defendant Martin O'Malley, the Commissioner of the Social Security Administration (the "Commissioner"),[1] have both filed briefs. *See* Dkts. 8, 11. Having reviewed the briefing, the record, and the applicable law, I remand this matter to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

Boutwell filed applications for benefits under Titles II and XVI of the Act on May 6, 2021, alleging disability beginning on June 2, 2019. His applications were denied and denied again upon reconsideration. On November 17, 2022, an Administrative Law Judge ("ALJ") held a hearing and found that Boutwell was not disabled. Boutwell filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. O'Malley is "automatically substituted" as the defendant in this suit. FED. R. CIV. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to "(1) whether the Commissioner applied the proper legal standards; and (2) whether the Commissioner's decision is supported by substantial evidence on the record as a whole." *Est. of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quotation omitted). The Commissioner uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's maximum capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id*.

## THE ALJ'S DECISION

At Step 1, the ALJ found that Boutwell "has not engaged in substantial gainful activity since June 2, 2019, the alleged onset date." Dkt. 2-1 at 21.

At Step 2, the ALJ found that Boutwell "has the following severe impairments: morbid obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, COPD, depression and anxiety." *Id*.

At Step 3, the ALJ found that Boutwell "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." *Id*. at 22.

Prior to consideration of Step 4, the ALJ determined Boutwell's RFC as follows:

> [Boutwell] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to ground level work only. He is unable to climb ladders, ropes or scaffolds. He is limited to occasional bending, stooping, kneeling, crouching, crawling and climbing of ramps and stairs. He is limited to work in a climate[-]controlled environment without exposure to pulmonary irritants, temperature extremes or humidity extremes. He is able to understand, remember and carry out only simple instructions; make decisions; attend and concentrate on decisions for extended periods; respond appropriately to routine changes in a work setting, interact adequately with supervisors and co-workers. He cannot do work that is fast-paced production, assembly line or quota driven work; his work should be goal oriented without pace so long as

completed by the end of shift; and he is limited to occasional interaction with supervisors, coworkers and the general public.

*Id.* at 24–25.

At Step 4, the ALJ found that "[Boutwell] is unable to perform any past relevant work." *Id.* at 33.

Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Boutwell] can perform." *Id.* at 34. Based on the Medical-Vocational Rules, the ALJ explained that Boutwell "has not been under a disability." *Id.* at 35.

## DISCUSSION

Boutwell raises two arguments for my review. First, Boutwell argues the ALJ'S RFC is unsupported by substantial evidence and is the product of legal error because the ALJ failed to incorporate into Boutwell's RFC standing/walking limitations from state agency medical opinions that he found persuasive. Second, Boutwell contends the ALJ's evaluation of the medical opinion of Richard Haraway, Ph.D. is unsupported by substantial evidence and does not follow Social Security regulations. I need only reach the first issue.

"In November 2021, the State agency reviewing consultant opined that [Boutwell] was reduced to a light residual functional capacity with the ability to stand and/or walk for a total of 4 hours and sit for a total of 6 hours combined in an eight-hour workday." *Id.* at 30. The ALJ found this opinion "generally persuasive," but found that Boutwell "is further limited." *Id.* at 31. Similarly, "[i]n May 2022, the State agency reviewing consultant opined that the claimant was reduced to a light residual functional capacity with the ability to stand and/or walk for a total of 4 hours combined in an eight[-]hour workday and sit for a total of 6 hours in an eight[-]hour workday." *Id.* The ALJ again found this opinion "generally persuasive," but found that Boutwell "has additional limitations." *Id.* Thus, if the ALJ disagreed with these opinions, the only reasonable reading is that the ALJ thought these opinions did not go far enough.

Yet, in crafting Boutwell's RFC, the ALJ imposed no standing or walking limitations. Moreover, the ALJ *also* found persuasive the opinion of Albert Oguejiofor, M.D. ("Dr. Oguejiofor"), the medical expert who testified at the hearing. In Dr. Oguejiofor's opinion, Boutwell needed no restrictions on standing or walking. The ALJ never explains how he resolved the conflict between the two state agency opinions, which would limit Boutwell to four hours of standing or walking, and Dr. Oguejiofor's opinion, which would not, in crafting Boutwell's RFC. As the Fifth Circuit has observed, "the general rule [is] that rejecting a conflicting medical opinion . . . requires an explanation." *Kneeland*, 850 F.3d at 760–61. Although the ALJ did not explicitly reject the state agency opinions, he implicitly rejected them by saying that they were persuasive but not imposing the limitations they recommended. In doing so, the ALJ was required to explain why he omitted a limitation from a persuasive opinion.

The Commissioner responds that "with nontreating physicians' opinions, an ALJ is free to incorporate only those limitations he finds consistent with [the] record." Dkt. 11 at 9. That is, of course, true. But it has no relevance whatsoever to the issue here, where the ALJ found the state agency opinions *persuasive*. Moreover, if the ALJ found the state agency opinions inconsistent with the record, it was only because they did not go far enough. *See* Dkt. 2-1 at 31 ("However, the undersigned has found [Boutwell] is further limited . . . ."); *id.* ("However, the undersigned has found [Boutwell] has additional limitations . . . ."). In finding these opinions persuasive—and if anything, not limiting enough—the ALJ was required to explain why he did not then incorporate the recommended standing and walking limitations into Boutwell's RFC. It is true that conflicts are for the Commissioner to resolve, but there must still be an explanation for why conflicts are resolved the way they are. "In short, the duty to resolve conflicts in the medical evidence is for the Commissioner, not the courts, and a failure by the ALJ to resolve conflicting medical evidence constitutes legal error requiring remand." *Ridley v. Astrue*, No. CIV.A. H-08-3486, 2010 WL 9462578, at *7 (S.D. Tex. Nov. 30, 2010)

(remanding case where "the ALJ adopted the opinion of [one physician], who opined [the claimant] had no limitations whatsoever, while also adopting—without explanation—the medical opinion of [another] physician, that [the claimant] experienced several limitations that were not permanent."). The lack of such an explanation here is glaring and requires remand.

## CONCLUSION

For the reasons stated above, this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

SIGNED this 6th day of May 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE